## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| PERRIE BONNER and, DARRELL BRUCE, | ) ) ) | |
| Plaintiffs, | ) ) ) | NO. 2:05-CV-146 PS |
| v. | ) ) ) | |
| HOME123 CORPORATION and NEW CENTURY MORTGAGE CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Plaintiffs received letters from two subprime mortgage lenders offering them high interest rate mortgage loans after the lenders ran their credit reports.  Plaintiffs claim that the terms of the solicitations were vague and therefore did not constitute "a firm offer of credit" in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").   They also contend that the offers did not contain the necessary disclosures mandated by the FCRA, and they seek statutory damages and a permanent injunction as a result.  Before the Court is Defendants' Motion for Judgment on the Pleadings, which we grant in part and deny in part.

## I.  BACKGROUND

The facts culled from the Complaint, which we accept as true, reveal that Plaintiffs received pre-screened loan solicitations through the U.S. mail from Defendants Home123 Corporation and New Century Mortgage Corporation ("Defendants"), two subprime mortgage lenders.  Plaintiff Bonner received at least two solicitations, of which at least one was sent prior to December 1, 2004.  (*See* Compl. at ¶¶ 8, 23).  Plaintiff Bruce received one solicitation in the spring of 2005.   (*See id.* at ¶ 39.)  These solicitations, which were disseminated by Defendants,

all included language that stated: "You have received this offer because we [Defendants] obtained information from one or more credit bureaus identified below . . ." (*Id.* at ¶¶ 9, 12, 24, 27, 40, 43.)  Defendants thus engaged in "prescreening" of consumers based on information in credit reports provided by a consumer reporting agency.  (*Id.* at ¶¶ 11, 26, 42.)  The pre-screening "was intended to identify persons who have poor credit or have recently obtained bankruptcy discharges, for the purpose of targeting them for subprime credit." (*Id.* at ¶¶ 19, 35, 50.)  Neither Plaintiff authorized Defendants to use or access his credit report nor initiated any transaction with Defendants.  (*See id.* at ¶¶ 20, 22, 36, 38, 51, 53.)

Plaintiffs claim that Defendants violated § 1681b of the FCRA by sending letters with credit offers that were vague and lacking in terms and hence, did not constitute a "firm offer of credit."  (*Id.* at ¶¶ 56-60a.)  Therefore, Defendants did not have a "permissible purpose" to obtain and use Plaintiffs' consumer report information.  (*Id.*)  Plaintiffs also claim that Defendants failed to provide the requisite consumer disclosures in a "'clear and conspicuous' manner," thereby violating 15 U.S.C. § 1681m.  (*Id.* at ¶ 60b-d (citing § 1681m(d).)  Finally, Plaintiffs assert that these violations were done in a willful manner in violation of 15 U.S.C. § 1681n.  (*Id.* at ¶ 62.)  Plaintiffs therefore seek statutory damages up to $1,000 and injunctive relief as well as attorney's fees and costs.  (*See id.* at 12.)

Defendants filed a Motion for Judgment on the Pleadings, claiming that (1) due to a recent amendment to the FCRA there is no longer a private right of action for alleged violations of § 1681m; (2) Plaintiffs failed to allege any actual damages and thus are not entitled to statutory damages; and (3) FCRA's civil liability provision for willful noncompliance, § 1681n, does not provide for injunctive relief.  Defendants do not address Plaintiffs' claims of § 1681b

violations in its Motion.

On January 20, 2006, the Court held a hearing on the Motion for Judgment on the Pleadings.  After oral argument, the Court found that no private right of action exists for § 1681m violations after Congress amended the FCRA with the enactment of the Fair and Accurate Credit Transactions Act ("FACTA") in 2003.  The Court, however, also found that the elimination of the private right of action only applied to solicitations sent to Plaintiffs after the revised § 1681m(h)(8) effective date of December 1, 2004.  The Court took under advisement the issues of whether actual damages must be alleged to seek statutory damages and whether injunctive relief is a FCRA remedy available to private litigants.  The Court now elaborates on its previous findings and rules on the issues remaining in Defendants' Motion for Judgment on the Pleadings.

## II.  DISCUSSION

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Rule 12(c) permits a party to move for judgment on the pleadings after the parties have filed a complaint and an answer.  In considering such a motion, a court applies the same legal standards that apply to motions to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).  A motion under Rule 12(c) is not granted "unless it appears beyond a doubt that the non-moving party cannot prove any facts that would support his claim for relief."  *Id.* (citations and alterations omitted).  The Court, when ruling on a motion for judgment on the pleadings, must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of

3

the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

**A.      Plaintiff's Claims Alleging Violations of the "Clear and Conspicuous" Requirement with respect to Solicitations Mailed After December 1, 2004 Are Dismissed With Prejudice.**

**1.      Background on the FCRA and FACTA**

The FCRA places limits on when a creditor may access a consumer's credit report without the consumer's authorization.  The FCRA allows a creditor to access a consumer's credit report if the creditor extends a "firm offer of credit" to the consumer.  15 U.S.C. § 1681b(c)(1)(B)(i).  However, when a creditor makes a "firm offer of credit" to a consumer, the solicitation must include certain "clear and conspicuous" statements.  15 U.S.C. § 1681m(d)(1).  Such statements include a statement that the consumer has the ability to prevent future use of his credit report for pre-screening purposes.  *Id*.  § 1681n creates a private right of action for willful violations of the FCRA.

In 2003, Congress passed the Fair and Accurate Credit Transactions Act (FACTA). FACTA amended various provisions of the FCRA.  Pub. L. No. 108-159, 117 Stat. 1952 (2003). § 311(a) of FACTA added a subsection (h) to §1681m of the FCRA.  Pub. L. No. 108-159, § 311(a), 117 Stat. 1952, 1988-89 (2003).  Paragraph (8) of subsection (h) is titled "Enforcement" and provides:

> (A)      No civil actions
>
>          Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section.
>
> (B)      Administrative enforcement
>
>          This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

15 U.S.C. § 1681m(h)(8).  This provision became effective on December 1, 2004.  *See* 16 C.F.R.

602.1(c)(3)(xiii).

### 2.      Interpretation of §1681m(h)(8)(A)

When Congress drafts a statute, we take at face value what it says in the statute and apply it accordingly.  Thus, in interpreting a statute, a court "must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  The cardinal rule of statutory interpretation is to first examine the language of the statute itself.  *See United States v. Miscellaneous Firearms*, 376 F.3d 709, 712 (7th Cir. 2004), *cert. denied*, 544 U.S. 1019 (2005).  If the language is unambiguous, the "first canon is also the last" because "judicial inquiry is complete."  *Germain*, 503 U.S. at 254 (internal quotations omitted).

Here, the plain and unambiguous language of § 1681m(h)(8)(A) indicates that the phrase "this section" refers to § 1681m as a whole.  Plaintiffs argue that the word "section" is inherently ambiguous.  (Pls.' Resp. at 8.)  We are not convinced.  It is clear to the Court that Congress, for better or worse, has taken enforcement of the statute away from private litigants and instead has tasked federal agencies to enforce § 1681m.  Thus, any private right of action for a violation of §1681m has been eliminated.

Approximately a dozen district court judges in this circuit and elsewhere have addressed the precise issue presented here.  They have ruled as this Court has previously ruled after the oral argument, *i.e.*, that the phrase "this section" as used in § 1681m(h)(8)(A) refers to § 1681m in its entirety, and therefore any private right of action for a § 1681m violation has been eliminated. *See, e.g., Bruce v. Grieger's Motor Sales, Inc.*, 422 F. Supp. 2d 988, 992 (N.D. Ind. 2006) (Lozano, J.); *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053 (N.D. Cal. 2006)

(Hamilton, J.); *Stavroff v. Gurley Leep Dodge, Inc.*, 413 F. Supp. 2d 962, 966-67 (N.D. Ind. 2006) (Sharp, J.); *Harris v. Fletcher Chrysler Prods., Inc.,* 1:05-CV-1140, 2006 WL 279030, at *3 (S.D. Ind. Feb. 2, 2006) (McKinney, C.J.); *Villagran v. Freeway Ford, Ltd.*, Civ. A. H-05-2687, 2006 WL 964731, at *1 (S.D. Tex. Jan. 19, 2006) (Ellison, J); *Wanek v. C.M.A. Mortgage, Inc.*, 05 C 4775 (N.D. Ill. Dec. 12, 2005) (Lindberg. J.) (minute order); *Hernandez v. Citifinancial Servs., Inc.*, No. 05 C 2263, 2005 WL 3430858, at *2 (N.D. Ill. Dec. 9, 2005) (Filip, J.); *McCane v. America's Credit Jewelers, Inc.*, Civ.A 05 C 5089, 2005 WL 3299371, at *3 (N.D. Ill. Dec. 1, 2005) (Conlon, J.); *Pietras v. Curfin Oldsmobile, Inc.*, Civ.A. 05 C 4624, 2005 WL 2897386, at *4 (N.D. Ill. Nov. 1, 2005) (Conlon, J.); *Perry v. First Nat'l Bank*, No. 05 C 1470, slip op. at 2 (N.D. Ill. Sept. 13, 2005) (Gettleman, J.); *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993, 999 (N.D. Ill. 2005) (Gettleman, J.); *Murray v. Cross Country Bank*, 399 F. Supp. 2d 843, 845 (N.D. Ill. 2005) (Zagel, J.).   The Court has located only one case that has held to the contrary.  *See Barnette v. Brook Road, Inc.*, --- F. Supp. 2d ---, 3:05CV590, 2006 WL 1195913 (E.D. Va. May 3, 2006).

The Court recognizes that district court rulings are not binding on its decision.  *See TMF Tool Co., Inc. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990).   Nevertheless, "it is an entirely proper practice for district judges to give deference to persuasive opinions by their colleagues on the same court."  *Id*.  The Court finds the reasoning in these district court decisions to be sound and persuasive.  Accordingly, the Court concludes that FACTA eliminated any private right of action for a violation of § 1681m.[1]  Moreover, recent *dicta* from the Seventh Circuit further

---

[1]  The Court notes that this precise issue is currently before the Seventh Circuit.  *See Perry v. First Nat'l Bank*, No. 05 C 1470, slip op. (N.D. Ill. September 13, 2005), *appeal docketed*, No. 05-3867 (7th Cir. Sept. 29, 2005).

6

supports this conclusion.  *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 951 (7th Cir.

2006) ("A recent amendment to the [FCRA] abolishes private remedies for violations of the

clear-disclosure requirement, which in the future will be enforced administratively . . . .").

 Plaintiffs make several arguments to support their position.  None of them is persuasive.

First, the language at issue is contained within § 1681m(h) and it was derived from § 311 of

FACTA.  In essence, it states that there is no longer a private right of action for violations of

"this section" and that future violations of "this section" will be enforced administratively.  *See*

15 U.S.C. § 1681m(h)(8).  Plaintiffs argue that the location of the language within § 1681m(h) –

and not in a separate subsection – indicates that Congress intended the amendment to apply only

to § 1681m(h) and not to § 1681m in its entirety.   Thus, Plaintiffs argue that the phrase "this

section," which appears in § 1681m(h)(8), must only refer to § 1681m(h).  (Pls.' Resp. at 9-10.)

 In drafting statutes, Congress adheres to a standard whereby subsections are lower in the

hierarchy than sections.  *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004).

Thus, Congress is presumed to understand the difference between the term "section" and

"subsection."  For example, § 1681m(h)(8)(B) refers to § 1681s as a "section."  Indeed, in the

very provision at issue before the Court, Congress used the term "section" when it referenced §

1681n and § 1681o.  Therefore, when Congress used the term "this section" later in the very

same sentence, it was plainly referring to § 1681m and not to the subsection 1681m(h).  In

addition, throughout § 1681m, Congress frequently used the nomenclature "subsection" to

denote something lower in the hierarchy than a "section."  For example, § 1681m(h)(4) reads as

follows: "A person that is required to provide a notice under ***subsection (a)*** of ***this section***

cannot meet that requirement      . . . ." (emphasis added).  In this example, the reference to

7

"subsection (a)" is plainly a reference to § 1681m(a); likewise the reference to "this section" is to one step higher in the hierarchy – *i.e.*, § 1681m.  Thus, when Congress used the term "this section" in § 1681m(h)(8), it was referring to all of § 1681m.

Second, Plaintiffs assert that if all references to "section" in § 1681m(h) refer to § 1681m as a whole, then other provisions of the FCRA are rendered inconsistent or redundant.  (Pls.' Resp. at 11-12.)  For example, 15 U.S.C. § 1681s-2(c) provides that the private remedies sections of the FCRA – 15 U.S.C. § 1681n and § 1681o – do not apply to a portion of § 1681m, namely § 1681m(e).  Therefore, the argument goes, if § 1681m(h)(8)(A) in fact eliminated private remedies for all of § 1681m, then § 1681s-2(c) is superfluous and serves no purpose.

Plaintiffs are correct that a statute should be interpreted so as not to render certain parts of it superfluous or meaningless.  *See McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582, 587 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 747 (2005).  However, as other district courts have noted, "[s]urplusage does not always produce ambiguity and [courts'] preference for avoiding surplusage constructions is not absolute."  *Hernandez*, 2005 WL 3430858, at *5 (*citing Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004)).  Indeed, when there are two ways to read the text of a statute – one of which yields surplusage but gives the text its plain meaning, and the other way that does not yield surplusage but renders the text ambiguous – "applying the rule against surplusage is, absent other indications, inappropriate."  *Lamie*, 540 U.S. at 536.  In *Lamie*, the Supreme Court applied the plain meaning of a statute's terms even though it created surplusage "since that approach respect[ed] the words of Congress."  *Id*.

To be sure, "§ 1681m is not a model of precise draftsmanship."  *Murray*, 386 F. Supp. 2d

8

at 997.  Nevertheless, where, as here, there appears to be some tension between the canon of applying the plain meaning of the text and the canon of avoiding surplusage, the plain meaning canon wins out.  Accordingly, this Court finds that the phrase "this section" as used in § 1681m(h)(8)(A) refers to all of § 1681m.  *See Germain*, 503 U.S. at 253-54 ("in interpreting a statute a court should always turn first to [the] one, cardinal canon before all others . . . that a legislature says in a statute what it means and means in a statute what it says there").

Plaintiffs make a similar argument with respect to § 1681m(h)(7), a subsection that creates a "reasonable procedures" defense for failure to perform duties required by "this section."  15 U.S.C. § 1681m(h)(7).  Plaintiffs argue that if the phrase "this section" in § 1681m(h)(7) refers to all of § 1681m, then § 1681m(c) becomes redundant because it too provides for a "reasonable procedures" defense for any violation of "this section."  (Pls.' Resp. at 11.)  This is simply another example of the surplusage that has been created by a poorly drafted statute.  But again, surplusage does not equal ambiguity.  *See Lamie*, 540 U.S. at 536.

Plaintiffs' argument is flawed in any event.  If a court were to adopt Plaintiffs' position and interpret the phrase "this section" in §1681m(h) to mean "this subsection," then the court would also have to apply the same meaning to the phrase "this section" wherever it appears in § 1681m.  *See Pietras*, 2005 WL 2897386, at *4-5; *Hernandez*, 2005 WL 3430858, at *5.  But such a reading leads to an absurd result.  As other district courts have pointed out, the phrase "this section" appears six times in § 1681m, including twice in § 1681m(c).  § 1681m(c) provides in full:  "No person shall be held liable for any violation of ***this section*** if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of ***this section***."  (emphasis added).

9

Interpreting these two references to mean "this subsection" is untenable because § 1681m(c) does not prohibit any type of conduct to which the reasonable procedures defense would even apply. *See, e.g.*, *Pietras*, 2005 WL 2897386, at *4-5.

Next, Plaintiffs urge the Court to consider the legislative history of FACTA, the views of certain commentators and the purpose of FACTA, all of which Plaintiffs claim support their position. (Pls.' Resp. at 12-17.) This argument is a non-starter. The Supreme Court has repeatedly held that "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2626 (2005). "Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Id.* In other words, a court may not stray to the legislative history or other extrinsic material to alter the meaning of unambiguous terms in a statute. *See id.*; *Bruce*, 422 F. Supp. 2d at 992-93; *Hernandez*, 2005 WL 3430858, at *6; *Murray*, 386 F. Supp. 2d at 998-99. As explained above, the phrase "this section" as it is used in § 1681m(h)(8)(A) is not ambiguous. It plainly refers to § 1681m in its entirety. Thus, in the absence of an ambiguity, the Court cannot consider the legislative history of FACTA, the views of any commentators, the purpose of FACTA, or any other extrinsic material.

Finally, even if Congress made a scrivener's error (as Plaintiffs contend it did (*see* Pls.' Resp. 17-18)), we would not endeavor to correct the error on behalf of Congress. Rather, "it is up to Congress rather than the courts to fix it." *Exxon Mobil*, 125 S. Ct. at 2624; *Bruce*, 422 F. Supp. 2d at 992-93; *Hernandez*, 2005 WL 3430858, at *6.

**B.      Plaintiffs' Claims Alleging Violations of the "Clear and Conspicuous" Requirement with respect to Solicitations Mailed Before December 1, 2004 Remain in the Case.**

According to Plaintiffs' Complaint, Defendants sent some solicitations to Plaintiff

Bonner before December 1, 2004, the effective date of the FACTA amendment to § 1681m.

(*See* Compl. at ¶ 8.)  Plaintiffs therefore argue that the amended provision cannot work

retroactively to preclude claims based on those solicitations.  (*See* Pls.' Sur-reply *passim*.)

Defendants, on the other hand, assert that it does not matter when the solicitations were sent; the

relevant issue is when the complaint was filed, which was on April 20, 2005 – well after

December 1, 2004.  (*See* Defs.' Resp. to Sur-reply at 1-6.)  After analyzing governing precedent,

the Court finds that Plaintiffs have the better argument.

The Supreme Court decision in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) is the

central case for this issue.  The Supreme Court held:

> When a case implicates a federal statute enacted after the ***events in suit***,
> the court's first task is to determine whether Congress has expressly prescribed
> the statute's proper reach.  If Congress has done so, of course, there is no need to
> resort to judicial default rules.  When, however, the statute contains no such
> express command, the court must determine whether the new statute would have
> retroactive effect, i.e., whether it would impair rights a party possessed when he
> acted, increase a party's liability for past conduct or impose new duties with
> respect to transactions already completed.  If the statute would operate
> retroactively, our traditional presumption teaches that it does not govern absent
> clear congressional intent favoring such a result.

*Id.* at 280 (emphasis added).

Following the *Landgraf* standard, the Court must first decide whether Congress has

expressly dictated FACTA's reach.  It has not.  The statute at issue in *Landgraf* had a provision

explicitly stating that the effective date of the statute was the date of the enactment.  *Landgraf*,

511 U.S. at 257.  Despite such language, the Supreme Court still analyzed the statute for

11

retroactive effect.  *Id.* ("A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date.") Plaintiffs here admit that "[t]here are no express provisions in FACTA which state that § 311 should apply retroactively to pre-enactment conduct."  (Pls.' Sur-reply at 5 n.3.)  Without such express language, there is nothing to inform this Court of Congressional intent.  *See Landgraf*, 511 U.S. at 259-60 (noting that language such as "the new provisions 'shall apply to all proceedings pending on or commenced after the date of enactment of this Act[]'" is an example of clear Congressional intent of retroactivity).

The Court therefore must now turn to the second step of the *Landgraf* test and determine whether the revised § 1681m statute would have a retroactive effect.  Or in other words, "the [C]ourt must ask whether the new provision attaches new legal consequences to events completed before its enactment."  *Id.* at 269-70.  Defendants contend that FACTA did not alter the legal consequences of the pre-December 2004 mailing received by Bonner.  Instead, all that has changed are the entities capable of alleging a violation: private individuals prior to December 1, 2004 and federal regulatory agencies after that date.  (*See* Defs.' Reply at 8.)

It is true that federal agencies can bring claims against alleged offenders who violate the "clear and conspicuous" requirement – similar to private plaintiffs in the previous regime.  But needless to say, the legal consequences for those private plaintiffs have been altered; they are now unable to sue for monetary damages for a § 1681m violation.  *See Landgraf*, 511 U.S. at 278 (noting the Supreme Court's "traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment").  The right to bring a specific cause of action and the right to seek certain damages for such an action, which

12

Plaintiffs possessed when they received the allegedly improper solicitations, has been extinguished by FACTA. *See Kopec v. City of Elmhurst*, 193 F.3d 894, 903 (7th Cir. 1999) ("The general rule is that a court will not retroactively apply a statute which (among other things) 'diminishes substantive rights, or remedies,' unless the legislature made clear that this was its wish.") (citations omitted).

Furthermore, the FACTA amendment diminished Defendants' liability for conduct violating § 1681m. Governmental agencies will now have the only viable cause of action for violations of the "clear and conspicuous" requirement instead of Plaintiffs who had a greater monetary incentive to bring lawsuits for such improper solicitations. If the Court agreed with Defendants, they would essentially receive a financial amnesty (even if limited) for any improper behavior that occurred before December 1, 2004 because Plaintiffs did not file a complaint by that date. It is hard to imagine that such an outcome is what Congress intended. *See Phillips v. New Century Fin. Corp.*, 2006 WL 517653, at *6 (C.D. Cal. March 1 , 2006) (Carter, J.) ("The practical effect of the change is that an entire class of plaintiffs is eliminated, and defendants now face a significantly lesser chance of being held liable.") (citing *Hughes Aircraft Co. v. United States, ex rel. Schumer*, 520 U.S. 939, 949-52 (1997)); *Fisher v. Fin. America, LLC*, SACV 05-0888, slip op. at 9 (C.D. Cal. January 23, 2006) ("[T]he dramatic change in the identity of potential plaintiffs – in this case, removal of the powerful profit incentive for suit – would affect the substantive rights of the parties by essentially eliminating an entire cause of action and subjecting defendants to a much decreased likelihood of liability.")

Other Supreme Court precedent, namely *Hughes Aircraft Co. v. United States, ex rel. Schumer*, 520 U.S. 939 (1997), further supports this Court's analysis. In that case, a 1986

13

amendment to the False Claims Act permitted certain *qui tam* suits to be brought by private

litigants on behalf of the United States that had previously been barred by the 1982 *qui tam*

provision.  *See id.* at 941-42.  The plaintiff filed his suit in 1989 after the 1986 amendment

became effective, but his claim involved conduct that had occurred between 1982 and 1984 –

before the enactment of the 1986 amendment.  *See id.* at 943, 945.  The plaintiff in *Hughes* made

the same argument as Defendants do here – "Because the 1986 amendment became effective

before this suit was commenced, [plaintiff] contends that it, rather than the 1982 *qui tam*

provision controls."  *Id.* at 946.  The Supreme Court disagreed, holding that the "1986

amendment does not apply to this action and therefore this action should have been dismissed, as

required by the 1982 version of the Act."  *Id.* at 941-42.  Applying the analysis in *Landgraf*, it

stated:

> Nothing in the 1986 amendment evidences a clear intent by
> Congress that it be applied retroactively, and no one suggests
> otherwise.  Thus, under the analysis the Court adopted in
> *Landgraf*, if the 1986 amendment has a retroactive effect, then we
> presume it will not apply to the ***conduct alleged*** in this case, which
> occurred prior to its effective date.

*Id.* at 946 (emphasis added).  The Court concluded that the 1986 amendment increased the

number of potential plaintiffs to include private parties "motivated primarily by prospects of

monetary reward rather than the public good."  *Id.* at 949.  This expansion of plaintiffs, along

with the accompanying incentives, "essentially create[d] a new cause of action, not just an

increased likelihood that an existing cause of action will be pursued."  *Id.* at 950.

 *Hughes* is squarely on point although it presents the inverse of the situation before the

Court.  As explained above, *Hughes* involved a change in a statute that created a cause of action

that increased the defendant's exposure, while FACTA eliminated a cause of action (at least as it

relates to Plaintiffs) and thus decreased Defendants' exposure.  The point remains the same.
Under FACTA, incentives have changed, which in all likelihood will decrease Defendants'
liability for § 1681m violations –  as now only the government may administratively enforce §
1681m.  Thus, the same reasons which prevented retroactive application of the statute in *Hughes*
apply with equal force to the change in the statute in this case.

In similar contexts, the Seventh Circuit has found that certain statutes have an
impermissible retroactive effect, and thus can only be applied to conduct arising after the
enactment of the statute.  *See, e.g., Stone v. Hamilton*, 308 F.3d 751, 754, 757 (7th Cir. 2002)
(concluding, after applying the *Landgraf* test, that application of the 1996 Food Stamp Act
amendments to pre-1996 overissuances constituted an impermissible retroactive effect due to the
increase in legal consequences for food stamp recipients); *Jideonwo v. Immigration &
Naturalization Serv.*, 224 F.3d 692, 700 (7th Cir. 2000) (finding that application of the
Antiterrorism and Effective Death Penalty Act would have an impermissible retroactive effect
because it would alter the legal consequences of petitioner's plea).

Defendants also raise several other arguments to convince the Court to apply the FACTA
amendment retroactively.  First, Defendants maintain that this change in identity of plaintiffs is
no more severe than jurisdiction-stripping statutes, which are applied retroactively.  (Defs.'
Resp. to Sur-reply at 2.)  This is a stretch.  *Landgraf* held that "[p]resent law normally governs in
such situations [involving application of a new jurisdictional rule] because jurisdictional statutes
'speak to the power of the court rather than to the rights or obligations of the parties.'" *Landgraf*,
511 U.S. at 274 (citation omitted).  Thus, the Supreme Court "regularly applied intervening
statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying

15

conduct occurred or when the suit was filed." *Id.*  In such a scenario, a plaintiff simply has to file his complaint in the alternative jurisdiction without losing his right to file the suit.  Here, the newly-modified § 1681m speaks not to the power of a court to hear a particular case but rather to the ability of a specific party to bring a lawsuit at all.  *See id.* ("Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'") (citation omitted); *see also Hughes*, 520 U.S. at 951 ("Such [jurisdictional] statutes affect only *where* a suit may be brought, not *whether* it may be brought at all.  The 1986 amendment, however, does not merely allocate jurisdiction among forums.  Rather, it *creates* jurisdiction where none previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well.") (emphasis in original).  Accordingly, the FACTA amendments are not equivalent to jurisdictional statutes that are implemented retroactively without regard to their impact.

Defendants assert that the "conduct" at issue here is Plaintiffs' invocation of a federal court's power and not their receipt of allegedly improper solicitations from Defendants.  (Defs.' Resp. to Sur-reply at 5.)  In other words, in considering retroactivity Defendants ask this Court to consider when the case was filed and not when the conduct that gave rise to the lawsuit took place.  Once again, this analysis meets headlong with *Hughes*.  The 1986 amendments at issue in *Hughes*, which provided private litigants with a new cause of action for violations of the False Claims Act, became effective *before* the suit was filed.  *Hughes*, 520 U.S. at 943, 945.  The Supreme Court, notwithstanding the fact that the plaintiff commenced his suit after the amendment to the FCA, held that the amendment had a retroactive effect and thus should not apply to the conduct alleged (the FCA violations) that occurred prior to the effective date.  *Id.* at

949, 952.  It is therefore apparent that the focus should be on the date of the conduct that gives

rise to the cause of action – in the present case, when Plaintiffs received the solicitations from

Defendants – not the date that Plaintiffs brought the suit to effectuate their rights.  *See, e.g.,*

*Kopec v. City of Elmhurst*, 193 F.3d 894, 903 (7th Cir. 1999) (noting that, in determining

whether a statute is retroactive, the focus must be on the conduct that gives rise to the suit, not

the date the suit was filed); *see also Scott v. Boos*, 215 F.3d 940, 949 (9th Cir. 2000) (same).

Along the same lines, Defendants also claim that Plaintiffs did not rely on the law as it

existed before FACTA because they failed to file their lawsuit before December 1, 2004.  But

this is neither here nor there.  As discussed extensively above, the date of filing does not

determine retroactivity, and thus any inference that can be drawn from that date to demonstrate a

lack of reliance is immaterial.  As one court put it, "[t]he fact that Plaintiff waited until after the

[FACTA] amendment took effect to file suit does not vitiate the illegality of Defendant's

conduct or bar Plaintiff's claim absent an applicable statute of limitations, which does not exist

in the present case."  *See Phillips*, 2006 WL 517653, at *6.  In other words, simply failing to file

a complaint before the date of the FACTA amendment's enactment regarding pre-enactment

conduct does not somehow nullify the amendment's impermissible retroactive effect.

In sum, the date of the alleged conduct determines whether a federal statute applies to a

particular cause of action in those instances where Congress has not provided a clear statement

of the statute's temporal reach and the statute has an impermissible retroactive effect.  The Court

thus finds that § 1681m, amended by FACTA, has an impermissible retroactive effect by

extinguishing Plaintiffs' substantive right to have their day in court – which Plaintiffs possessed

when they received the allegedly improper solicitations.[2]  Accordingly, the FACTA amendment

to § 1681m, which bars private litigants' claims under § 1681m, does not apply to Plaintiffs'

claims involving solicitations sent before December 1, 2004.

**C.      Plaintiffs Are Entitled to Statutory Damages Even Though They Have Not Alleged Actual Damages.**

Plaintiffs concede that they suffered no actual loss from their receipt of the solicitations

from Defendants.  As a result, Plaintiffs seek only statutory damages, not actual damages.

Defendants claim that Plaintiffs can only get statutory damages if they first prove actual

damages.  A plain reading of the damages section of the FCRA relevant here – § 1681n –

counsels to the contrary.  That section reads as follows:

§ 1681n.  Civil liability for willful noncompliance

(a)      In general.  Any person who willfully fails to comply with any requirement imposed under this subchapter [15 U.S.C. §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(1)      (A)      any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000; or

(B)      in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2)      such amount of punitive damages as the court may allow; and

(3)      in the case of any successful action to enforce any liability under this

---

[2]  The Seventh Circuit recently noted, albeit in dicta, the same point.  *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) ("A recent amendment to the Act abolished private remedies for violations of the clear-disclosure requirement, which in the future will be enforced administratively, but that change does not apply to offers made before its effective date and thus does not affect this litigation.").

section, the costs of the action together with reasonable attorneys' fees as determined by the court.

Defendants argue that because Congress placed statutory damages in the same clause as actual damages and linked both types of damages with the disjunctive "or," Congress intended that a plaintiff must establish some injury as a result of the alleged FCRA violation before obtaining any damages.  (Defs.' Mem at 11.)  Defendants rely on *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603 (7th Cir. 2005) for the proposition that actual damages are a predicate to the recovery of statutory damages.  (*See, e.g.,* Defs.' Mem. at 10.)

Defendants support the plain reading of the statute when it is to their benefit (*see* section IIA *supra* applying the plain meaning of § 1681m) but are not nearly as sanguine about that approach when it is to their detriment.  But what is good for the goose is good for the gander. The plain and unambiguous language in § 1681n(a)(1)(A) indicates that Congress intended plaintiffs to have a choice between actual damages or statutory damages.  That's why they used the word "or."  *See Villanueva v. Motor Town, Inc.*, 619 F.2d 632, 635 (7th Cir. 1980) (noting that "or" expresses an alternative when analyzing the plain meaning of a statute).  A recent Seventh Circuit case under the FCRA confirms this approach:  "[I]ndividual losses, if any, are likely to be small – a modest concern about privacy, a slight chance that information would leak out and lead to identity theft.  That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages ***without proof of actual damages***." *Murray*, 434 F.3d at 953 (emphasis added).

Defendants do not cite a single case that stands for the proposition that "or" means "and" in § 1681n.  In addition to *Murray*, every case we found holds, not surprisingly, to the contrary. *See, e.g., Tremble v. Town & Country Credit Corp.*, 05 C 2625, 2006 WL 163140, at *3 (N.D.

19

Ill. January 18, 2006) ("Section 1681n(a)(1)(A) unambiguously allows recovery of any actual damages sustained **or** damages of not less than $100 or more than $1000.  The provision is worded in the disjunctive: 'or' means or.") (emphasis in original); *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 302-03 (N.D. Ill. 2005) ("Statutory damages are an alternative remedy to actual damages, and a plaintiff cannot get both actual and statutory damages.  Consequently, a plaintiff does not have to prove actual injury or harm in order to get statutory damages.") (citations omitted); *Buxton v. Equifax Credit Info. Servs., Inc.*, 02 C 6288, 2003 WL 22844245, at *4-5 (N.D. Ill. December 1, 2003) (analyzing plaintiff's statutory damages claim after determining that plaintiff suffered no harm that would entitle her to actual damages: to receive statutory damages under the FCRA, "[t]he plaintiff must only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer.") (citation omitted).  *See also Ashby v. Farmers Ins. Co. of Oregon*, CV 01-1446, 2004 WL 2359968, at *5 (D. Or. Oct. 18, 2004); *Menton v. Experian Corp.*, 02 Civ. 4687, 2003 WL 941388, at *3 (S.D.N.Y. March 6, 2003); *Braxton v. Farmer's Ins. Group*, 209 F.R.D. 654, 658 (N.D. Ala. 2002).

Moreover, this reading of § 1681n – that plaintiffs may pursue either statutory damages or actual damages –is "standard judicial treatment of statutory damages" in the context of federal consumer protection.  *Murray*, 232 F.R.D. at 303 n.9.  As the court pointed out in that case, several federal consumer protection acts do not require plaintiffs to establish actual damages to recover statutory damages.  *Id.*  Defendants respond that "Congress did not add a new paragraph to § 1681n(a), such that statutory damages stood as a separate form of recovery akin to punitive damages. . . . FCRA stands alone [separate from the other federal consumer protection statutes]

20

in connecting statutory damages to actual damages in the same paragraph."  (Defs.' Reply at 12.)
While it may have been better for Congress to have drafted the provision for statutory damages
in a separate paragraph, the statute is nonetheless unambiguous.

Nothing in *Ruffin-Thompkins* commands a different result.  The Seventh Circuit in
*Ruffin-Thompkins* spent a great deal of its opinion explaining why the plaintiff was not entitled
to damages under § 1681n for her § 1681i claim.  For example, the court, after stating that the
plaintiff "must show that she 'suffered damages as a result of the inaccurate information[,]'"
ultimately concluded that she had not done so because she did not demonstrate that she was
denied credit because of the inaccuracy in her credit report.  422 F.3d at 608-09 (citations
omitted).  The court moved on to describe Plaintiff's claim for damages for emotional distress,
which the court subsequently rejected as conclusory.  *Id.* at 609.  The court **only then** discussed
the plaintiff's statutory and punitive damages, holding that because plaintiff could not prove a
FCRA violation, it followed that she could not seek statutory or punitive damages.  *Id.* at 610.

Based on this Court's review of *Ruffin-Thompkins*, it concludes that the bulk of the
Seventh Circuit's opinion involving damages was a discussion regarding the plaintiff's claim for
***actual damages***, which requires a cognizable loss, and not regarding plaintiff's claim for
statutory damages.  *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)
("Without a causal relation between the violation of the statute and the loss of credit, or some
other harm, a plaintiff cannot obtain an award of 'actual damages,' which is one of the remedies
under the Fair Credit Reporting Act.") (citations omitted).  Therefore, *Ruffin-Thompkins* does not
stand for the proposition that actual damages are a predicate for statutory damages.  *See Murray
v. Cingular Wireless II, LLC*, 05 C 1334, slip op. at 8 (N.D. Ill. Dec. 22, 2005) (Manning, J.) ("If

the plaintiffs' claim that [defendant] willfully violated certain sections of the FCRA ends up

carrying the day, they thus may recover statutory damages even if they have not suffered any

actual damages.  This conclusion is entirely consistent with *Ruffin-Thompkins*, as in that case,

the plaintiff's claim for statutory damages failed because the plaintiff failed to show that the

defendant had willfully violated the FCRA (which is a prerequisite to statutory damages under [§

1681n]).") (citation omitted).

Defendants also cite several other cases to bolster their reading of § 1681n.  None of

them supports the proposition that actual damages are necessary to obtain statutory damages.

First, the Seventh Circuit in *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834-35 (7th Cir.

2004), held that the plaintiff failed to prove a violation of the FCRA's reinvestigation

requirement under § 1681i, let alone a willful violation as required to recover punitive damages.

Again, the majority of the holding dealt with actual damages or emotional distress, with only one

paragraph dedicated to the issue of statutory damages, which, in any event, the court construed

as a request for punitive damages.  *Id.*  The Seventh Circuit therefore did not provide any

precedent regarding statutory damages in that decision.  *See Tremble*, 2006 WL 163140, at *4

("In short, *Wantz* does not address the issue involved in the present case [where plaintiffs alleged

violations of § 1681b and sought statutory damages].").

Second, the court in *Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004),

primarily discussed the issue of actual damages in its section on the relief sought by the plaintiff.

It allotted three sentences to statutory damages:

> [T]o obtain statutory damages under FCRA § 1681n(a), [plaintiff]
> must show that [defendant] willfully violated the Act.  There is
> similarly no evidence of willfulness.  Summary judgment was
> properly granted on this claim.

22

*Id.* at 971.  This language is insufficient to show that Plaintiffs must prove actual damages as a predicate to recovery of statutory damages.  Instead, the language merely shows that Plaintiffs must demonstrate willfulness to obtain statutory damages.  *See Tremble*, 2006 WL 163140, at *4 ("*Sarver* has no bearing on the issue in this case; the Court did not say or suggest that statutory damages under § 1681n(a)(1)(A) are anything other than an alternative to 'actual damages.'").

Finally, the Court's holding in *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 667 (7th Cir. 2001), involved § 1681n's provision regarding attorneys' fees.  It did not hold that the award of statutory damages requires a causal relation between a violation of the statute and an actual loss to award statutory damages.

As seen above, case law calls for Plaintiffs to prove willfulness to obtain statutory damages under § 1681n.  Plaintiffs claim that Defendants improperly accessed Plaintiffs' credit information, thus violating § 1681b, and failed to comply with the clear and conspicuous requirement for solicitations, thus violating § 1681m.  This Court must accept these allegations as true, and therefore we presume at this point that a FCRA violation has occurred under § 1681b and § 1681m.  The allegations of actual FCRA violations, along with the fact that Plaintiffs seek statutory damages, are sufficient to distinguish *Ruffin-Thompkins* and the other Seventh Circuit decisions from this case.  *See Tremble*, 2006 WL 163140, at *5 ("[T]o the extent that Seventh Circuit's decisions discuss the availability of what they refer to as 'statutory damages,' they decided the issue on the basis of the lack of evidence of willfulness or of any statutory violation at all, not because the plaintiffs had to show actual loss in order to obtain statutory damages.").[3]

---

[3]  Plaintiffs request injunctive relief as well as statutory damages.  Defendants have asked for judgment on the pleadings as it relates to the injunctive relief claim.  Because this case is

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings [Doc. 45] is  **GRANTED IN PART** and **DENIED IN PART**.   Judgment on the pleadings is **GRANTED** as to Plaintiffs' claims under §1681m involving solicitations received from Defendants after December 1, 2004.  Judgment on the pleadings is **DENIED** as to Plaintiffs' claims under § 1681m involving solicitations received from Defendants before December 1, 2004.  Judgment on the pleadings is **DENIED** on Plaintiffs' claims seeking statutory damages.

**SO ORDERED.**

ENTERED:  May 25, 2006

s/ Philip Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

---

going forward on Plaintiffs' claim for statutory damages for solicitations made prior to December 1, 2004 and for violations of § 1681b, we leave for another day whether – if they prevail in this action – Plaintiffs would also be entitled to an injunction.  Defendants may re-raise the issue should the need arise later.