UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PERRIE BONNER and, <br> DARRELL BRUCE, <br>                Plaintiffs, <br><br> v. <br><br> HOME123 CORPORATION and <br> NEW CENTURY MORTGAGE <br> CORPORATION, <br>                Defendants. | ) <br> ) <br> ) <br> ) <br> )  NO. 2:05-CV-146 PS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

Perrie Bonner and Darrell Bruce received letters from two subprime mortgage lenders offering them high interest rate mortgage loans after the lenders ran their credit reports. They claim that the terms of the solicitations were vague and therefore did not constitute "a firm offer of credit" in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). They also contend that the offers did not contain the necessary disclosures mandated by the FCRA, and they seek statutory damages and a permanent injunction as a result. This matter is currently before the Court on Plaintiffs Bonner and Bruce's Motion For Class Certification [Doc. 35] pursuant to Federal Rule of Civil Procedure 23. Because Plaintiffs have sufficiently demonstrated the requirements of Rule 23, their Motion for Class Certification is **GRANTED**.

### I. BACKGROUND

Plaintiffs received pre-screened loan solicitations through the U.S. mail from Defendants Home123 Corporation and New Century Mortgage Corporation ("Defendants"), two subprime mortgage lenders. Plaintiffs Bonner and Bruce each received one letter from Defendant New Century, (*see* Compl. Ex. A & D), and Plaintiff Bonner received one letter from Defendant

Home 123, (*see id.*, Ex. B).  These solicitations, which were disseminated by Defendants, all included language that stated: "You have received this offer because we [Defendants] obtained information from one or more credit bureaus identified below . . . ."  (*Id.* at ¶¶ 9, 12, 24, 27, 40, 43.)  Defendants thus engaged in "prescreening" of consumers based on information in credit reports provided by a consumer reporting agency.  (*Id.* at ¶¶ 11, 26, 42.)  The pre-screening "was intended to identify persons who have poor credit or have recently obtained bankruptcy discharges, for the purpose of targeting them for subprime credit."  (*Id.* at ¶¶ 19, 35, 50.)  Neither Plaintiff authorized Defendants to use or access his credit report nor initiated any transaction with Defendants.  (*See id.* at ¶¶ 20, 22, 36, 38, 51, 53.)

Plaintiffs claim that Defendants violated § 1681b of the FCRA by sending letters with credit offers that were vague and lacking in terms and hence, did not constitute a "firm offer of credit."  (*Id.* at ¶¶ 56-60a.)  Therefore, Defendants did not have a "permissible purpose" to obtain and use Plaintiffs' consumer report information.  (*Id.*)  Plaintiffs also claim that Defendants failed to provide the requisite consumer disclosures in a "'clear and conspicuous' manner," thereby violating 15 U.S.C. § 1681m.  (*Id.* at ¶ 60b-d (citing § 1681m(d)).)  Specifically, Plaintiffs contend that Defendants' disclosures "were in the fine print on the back of the mailing with no reference on the front."  (Mem. at 2.)  Finally, Plaintiffs assert that these violations were done in a willful manner in violation of 15 U.S.C. § 1681n.  (*Id.* at ¶ 62.)  Plaintiffs therefore seek statutory damages up to $1,000 and injunctive relief as well as attorney's fees and costs.  (*See id.* at 12.)

Plaintiffs filed a motion seeking certification of two classes defined as people residing in Indiana, Illinois or Wisconsin who received solicitations from Defendants similar to the ones

2

received by the named Plaintiffs (*see* Compl., Exs. A, B & D) on or after April 20, 2003 and before May 10, 2005.  Plaintiffs subsequently filed a motion for leave to modify the proposed class definitions [Doc. 94].  Plaintiffs' only modification was to limit the class to people residing within the Northern District of Indiana.  The Court now finds that class certification is proper in this case, and accordingly grants Plaintiffs' Motion.  The Court also grants Plaintiffs' Motion to modify the class definitions.

## II.  DISCUSSION

Motions for class certification must meet the requirements set under Rule 23 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 23.  Rule 23 establishes two main requirements for class certification.  First, the action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation.  Second, the proposed class must satisfy at least one of the three provisions under Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs seek certification under Rule 23(b)(3), which requires them to demonstrate that common questions of law or fact predominate over any questions affecting only individual class members and that a class action is a superior method of adjudicating the controversy.

The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 are satisfied.  *See Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).  Failure on the part of the movant to satisfy any one of the requirements of Rule 23(a) or (b) precludes class certification.  *See Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980).  The court has broad discretion in ruling on a motion for class certification.  *See Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

For purposes of a motion to certify a class, the court does not reach the merits of the complaint. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (citation and internal quotations omitted). However, the Seventh Circuit has instructed the district courts to make "whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

**A.     Numerosity**

Rule 23(a)(1) requires that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts generally have found this element satisfied when the putative class consists of more than 40 members. *See Ingram v. Corporate Receivables, Inc.*, No. 02 C 6608, 2003 WL 21982152, at *2 (N.D. Ill. August 19, 2003) (citing *Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)); *see also, e.g., Markham v. White*, 171 F.R.D. 217, 221 (N.D. Ill. 1997) (35-40 class members); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D. Ill. 1996) (38 class members). The exact number of class members need not be known. *Ingram*, 2003 WL 21982152, at *2. Instead, plaintiffs can "offer good faith estimates of class size . . . and the Court may use 'common sense assumptions' to determine the validity of those estimates." *Id.*; *see also Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 WL 139472, at *2 (N.D. Ill. March 25, 1997) (quoting *Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983)).

In this case, Plaintiffs estimate that the classes would exceed 50,000 people. (*See* Mot. Modify Proposed Class Definitions at 3.) Defendants do not deny this approximation or submit

4

any different numbers in their Response. Plaintiffs' estimation of over 50,000 individuals (and Defendant's failure to refute this estimation) is sufficient to fulfill the numerosity requirement.

**B.     Commonality**

Under Rule 23(a)(2), "questions of law or fact common to the class" must be present before a class may be certified. The existence of a "common nucleus of operative facts" is generally enough to establish commonality under Rule 23(a)(2). *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Courts consistently have found a common nucleus of operative facts if defendants have allegedly directed standardized conduct toward the putative class members or if the class claims arise out of standardized documents. *Rosario*, 963 F.2d at 1018; *Johnson v. Aronson Furniture Co.*, No. 96 C 117, 1998 WL 641342, at *3 (N.D. Ill. Sept. 11, 1998); *Peterson v. H & R Block Tax Servs. Inc.*, 174 F.R.D. 78, 82 (N.D. Ill. 1997). Plaintiffs normally are only required to show that "there is 'at least one question of law or fact common to the class' . . . ." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (citation omitted). When a "question of law refers to a standardized conduct by defendants toward members of the class, a common nucleus of operative facts is typically presented, and the commonality requirement is usually met." *Von Moore v. Simpson*, No. 96 CV 2971, 1997 WL 570769, at *3 (N.D. Ill. Sept. 10, 1997) (citation and internal quotations omitted).

Plaintiffs here have satisfied the requirements of Rule 23(a)(2). Defendants' practice of obtaining and using consumer credit information for the purpose of sending solicitations to Plaintiffs and the class members is the "common nucleus of operative facts" in this case. Moreover, two common questions of law are presented: (1) do the solicitations sent by

5

Defendants qualify as a "firm offer of credit" under 15 U.S.C. § 1681b; and (2) are the disclosures in the solicitations "clear and conspicuous" as required by § 1681m. The first question requires an analysis of the solicitation letters, and the second question is decided on the face of the letters. Both issues are class-wide in nature as they apply to everyone who received the solicitations. *See Tremble v. Ocean Bank*, 05 C 2624, slip op. at 3, (N.D. Ill. March 21, 2006) (St. Eve, J.) (finding the commonality element satisfied because "[i]f Defendant violated the FCRA as to [Plaintiff] (by not providing 'clear and conspicuous' notice or by failing to make a 'firm offer'), then it did so as well as to the other members in the class").

Accordingly, because the claims arise from Defendants' standardized conduct – both in the sending of the form letters and the standardized documents themselves –  the commonality requirement has been met.

**C.      Typicality**

Under Rule 23(a)(3), the claims or defenses of the class representative must be typical of those of the class as a whole. The claim of a named plaintiff is typical of the class if "'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Johnson v. Aronson Furniture Co.*, 1998 WL 641342, at *3 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). The typicality requirement is closely related to the commonality requirement under Rule 23(a)(2). *Rosario*, 963 F.2d at 1018.

In this case, each absent class member has been subjected to the same course of conduct and event as Plaintiffs – namely, Defendants accessed each individual's consumer information, and each individual received Defendants' substantively identical solicitation. *See Tremble*, slip

6

op. at 3 (finding typicality prong met where "[plaintiff's] claim arises from the same event or course of conduct as that affecting all class members – Defendant's form-letter mass-mailing"). As demonstrated in the previous section, Plaintiffs' claims are also based on the same legal theory as the claims of the other class members – specifically, the solicitations do not reflect a firm offer of credit and do not contain clear and conspicuous disclosures.

**D.      Adequacy of Representation**

Under Rule 23(a)(4), the adequacy of representation requirement mandates that both the class representative and counsel for the named plaintiff zealously represent and advocate on behalf of the class as a whole. *See Retired Chicago Police Ass'n*, 7 F.3d at 598. As the class representative, a plaintiff must not have "antagonistic or conflicting claims with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy[.]" *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999) (citation omitted). Counsel for named plaintiffs must be experienced and qualified and generally be able to conduct the litigation. *See Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995) (citation omitted).

Here, we find no evidence in the record that Plaintiffs' claims conflict with or are antagonistic to the claims of the proposed class members. All members in this class received solicitations from Defendants, who accessed the class members' consumer credit information. The Court further finds that Plaintiffs have a sufficient stake in the outcome of the litigation to ensure that they will be zealous advocates on behalf of the class.

In addition, counsel for the named plaintiffs in this case are experienced in handling class action lawsuits regarding fair credit reporting practices. (*See* D. Edelman Decl.) They also have

competently handled several cases before this Court in the past. Thus, the adequacy of representation requirement under Rule 23(a)(4) has been met.

Defendants, however, assert that named Plaintiffs are inadequate because they failed to allege all available claims (*i.e.*, actual damages, punitive damages or negligent noncompliance) to the detriment of the absent class members. (Opp. at 25.) The Seventh Circuit has recently rejected this argument. In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), the court held that "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." This is exactly what Plaintiffs are doing in the face of "modest damages without proof of injury" for the vast majority of absent class members. *Id.* If some class members do have sizeable actual damages or wish to seek damages under other potential theories, "they may opt out and litigate independently[,]" as suggested by the Seventh Circuit. *Id.*

### E.    Requirements of Federal Rule of Civil Procedure 23(b)(3)

In addition to meeting class certification requirements under Rule 23(a), Plaintiffs' proposed class must satisfy the requirements of one of the three subsections of Rule 23(b). Here, Plaintiffs propose that certification is appropriate under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Szabo* 249 F.3d at 676.

### 1.      Predominance of Class Issues over Individual Issues

Under the predominance requirement of Rule 23(b)(3), common questions of law or fact must predominate, but they need not be exclusive.  *See Scholes v. Moore*, 150 F.R.D. 133, 138 (N.D. Ill. 1993) (citation omitted).  In determining whether common questions predominate, the Court looks to whether there is a "common nucleus of operative facts."  *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 535-36 (N.D. Ill. 1995).

As noted under the "commonality" section, there is a "common nucleus of operative facts" in this case.  Specifically, Defendants obtained and/or used the class members' credit report information for the purpose of sending solicitations to them.  Those standard solicitations are at the core of Plaintiffs' Complaint.  Moreover, as also noted earlier, there are two common questions of law at issue in this case: (1) do the solicitations sent by Defendants qualify as a "firm offer of credit" under § 1681b; and (2) are the disclosures in the solicitations "clear and conspicuous" as required by § 1681m.  The issues of law and fact that flow from Defendants' form letter predominate over any individual issue.  Because the common issues of fact and law are likely to dominate this Court's attention, common questions of law and fact predominate.  *See Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2003 WL 21372471, at *9 (N.D. Ill. June 13, 2003).

Defendants, in their Response, raise several arguments regarding why common questions do not predominate in this case.  They are wrong on all counts.  First, Defendants claim that a "firm offer of credit" to a consumer depends on "individualized examinations of each class member's financial circumstances."  (Opp. at 15.)  They principally rely on *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004) as support for this argument.  In particular, they state:

9

"[e]valuating the 'entire context' and the 'variety of factual issues' involved in [Defendants'] offer to determine whether it had 'sufficient value' for a particular consumer is a highly individualized endeavor."  (Opp. at 17 (citing *Cole*, 389 F.3d at 726, 728).)  Defendants' interpretation of *Cole*, however, is misguided.  The Seventh Circuit clarified its *Cole* holding in *Murray v. GMAC Mortgage Corp.*:

> We do not read *Cole*, however, to require a consumer-by-consumer evaluation. An offer has value to "the consumer" if it is useful to the *normal* consumer. *Cole*'s objective was to separate *bona fide* offers of credit from advertisements for products and services, determining from "*all* the material conditions that comprise the credit product in question whether it was a guise for solicitation rather than a legitimate credit product."  That depends on the terms of the offer, not on recipients' idiosyncratic circumstances.

434 F.3d at 955-56 (original citations and alterations omitted).  Thus, the court found that a district court "need only determine whether the four corners of the offer satisfy the statutory definition . . . and whether the terms are honored when consumers accept.  These questions readily may be resolved for a class as a whole."  *Id.* at 956.  Accordingly, the Court finds Defendants' position without merit.[1]

Second, Defendants incorrectly argue that the "clear and conspicuous" requirement mandates individualized inquiry as to whether a particular consumer actually noticed the disclosure.  (Opp. at 20.)  "Whether the disclosures contained in the [solicitations] are clear and conspicuous is a matter of law" and is based on an objective standard of what a reasonable consumer should notice.  *Cole*, 389 F.3d at 729; *see id.* at 730 (relying upon UCC definition of

---

[1] Defendants attempt to distinguish mortgage offers of credit from other credit products. (*See* Opp. at 18 n.8.)  They argue that the mortgage product is more complex and individualized because of issues relating to property value, property location and type of property.  (*Id.*)  The Court is unconvinced.  The Seventh Circuit decision reversing the denial of class certification in *Murray* also involved a mortgage product.

10

conspicuous – whether a reasonable person ought to have noticed the disclosure – in deciding whether a disclosure fulfills the FCRA requirements); *see also Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 805-06 (7th Cir. 2001); *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 514-15 (7th Cir. 1999).  There is therefore no legal requirement to question each class member about whether he or she noticed the disclosure.  The Seventh Circuit in *Cole*, for example, analyzed only the mailing to determine whether it contained "clear and conspicuous" disclosures; it did not discuss whether the plaintiff actually saw the disclosures.  *Cole*, 389 F.3d at 731.

Defendants also assert that willfulness cannot be proved on a classwide basis: "willfulness is beset with individual questions because plaintiffs must show that [Defendants] knowingly and intentionally violated FCRA for each letter."  (Opp. at 21.)  The Court is hard-pressed to believe that Defendants, if found liable of FCRA violations, acted willfully when sending some solicitations and acted negligently when sending others.  Defendants subjected all absent class members to the same practice, and caused them, according to Plaintiffs, "an increased risk of improper disclosure and identity theft, without notice of the ways in which they can protect themselves."  (Reply at 11 (citations omitted).)  *See also Kudlicki v. Farragut Fin. Corp.*, 05 C 2459, slip op. at 2 (N.D. Ill. September 29, 2005) (Lindberg, J.) (deferring decision regarding plaintiff's ability to prove willfulness in court's order granting class certification). Thus, the Court does not find the issue of willfulness sufficient to overcome class certification.

Defendants further maintain that whether a class member is entitled to statutory damages of $100 to $1,000 is an individualized question.  (Opp. at 22.)  As already held by this Court, Plaintiffs are entitled to statutory damages even though they have not alleged actual damages.  (*See* 5/25/06 Ord. at 18 [Doc. 100].)  Each class member therefore need not prove individual

11

actual damages or provide proof of causation to obtain statutory damages. *See Murray*, 434 F.3d at 953 ("[I]ndividual losses, if any, are likely to be small – a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the [FCRA] provide for modest damages without proof of injury."). Any other individual issues regarding statutory damages are not sufficiently significant to defeat class certification. *See Cavin v. Home Loan Ctr., Inc.*, --- F.R.D.---, No. 05 C 4987, 2006 WL 1313191, at *6 (N.D. Ill. May 10, 2006) (noting that "it is settled law that individualized damages, absent more, will not generally preclude class certification" when analyzing the predominance requirement in the FCRA context) (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004)); *Kudlicki*, 05 C 2459, slip op. at 2 ("Even if there were individualized questions relating to damages, they are not significant enough to defeat class certification) (citing *De La Fuente v. Stokely-Van Camp Inc.*, 713 F.2d 225, 233 (7th Cir. 1983)).

Finally, Defendants, in a last-ditch effort to salvage their opposition to class certification, raise a "cash back" argument in their response to Plaintiffs' motion to modify the class definitions. Specifically, they argue that class members received solicitations offering different amounts of "cash back" as part of the loan – the amount depending on their estimated home value, mortgage balance and other individualized factors. (Defs. Resp to Mot. Modify Class Definitions at 3-4.) But as the Seventh Circuit cautioned, each consumers' "idiosyncratic circumstances" are irrelevant as to whether or not a firm offer of credit was extended. *Murray*, 434 F.3d at 956. Instead, to determine whether Defendants extended a firm offer of credit, the Court "need only determine whether the four corners of the offer satisfy the [FCRA] (as

12

elaborated in *Cole*), and whether the terms are honored when consumers accept." *Id.*

Accordingly, Plaintiffs have met the predominance prong by showing that common issues of fact and law will predominate in this case.

### 2. Superiority of Class Action for Fair and Efficient Adjudication of the Controversy

Under Rule 23(b)(3), a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. *Szabo*, 249 F.3d at 676. The Court finds that a class action in this case is superior to other means of adjudication for two reasons. First, as discussed previously, this dispute contains a set of legal and factual issues that are shared by the members of the class, and class certification is more efficient than multiple individual suits at dealing with these common questions. *See Tatz*, 2003 WL 21372471, at *9. Denial of the motion for class certification would potentially result in courts becoming consumed with many individual cases that seek to litigate an essential core of the same legal and factual issues.

Second, a class action is superior to individual action in this case because litigation costs are high and the likely recovery is limited. Thus, recipients of the letter are unlikely to prosecute individual claims without the availability of cost-sharing efficiencies of a class action. *See id.* at *10 (citing *Haynes v. Logan Furniture Mart. Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974)). Furthermore, many of the persons in these classes may be unaware that the form letter sent by Defendants may violate the FCRA, and a class action suit may help to safeguard their rights. Public policy encourages that cases of this type proceed as class actions in order to put an end to any illegal activity that may be occurring.

Defendants' arguments to the contrary have been soundly rejected by the Seventh Circuit. Their contentions that the potential "staggering damage award" would "shock the

13

conscience" or violate their due process are without merit.  (Opp. at 7.)  Plaintiffs have limited the class definition to those recipients residing in the Northern District of Indiana – more than 50,000 individuals.  This is hardly a shocking number of class members; nor is the possible damages award "catastrophic" or "horrendous."  (*Id.*)  More significant, Defendants created this situation by their own making – by accessing thousands of individuals' credit scores and sending solicitations to them.  *See Murray*, 434 F.3d at 953 ("The reason that damages can be substantial, however, does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, combined with [Defendant's] decision to obtain the credit scores of more than a million persons.") (citation omitted); *Murray v. Cingular Wireless II, LLC*, 05 C 1334, 2005 U.S. Dist. LEXIS 39542, at *16-17 (N.D. Ill. Dec. 22, 2005) (Manning, J.) ("[Defendant] created the potential for a large damages award by sending out a slew of unsolicited offers of credit, and cannot use the large number of potentially injured individuals to shield itself from class certification.").  In any event, if the damages award rises to a due process violation or is ruinous to Defendants' business, this Court has the authority to adjust the statutory damages amount if necessary.  *See Murray*, 434 F.3d at 954 ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.") (citing *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003)).

      Finally, Defendants argue that a class action is not a superior mechanism of adjudication because of the "costless" alternatives of individual actions (because prevailing plaintiffs are entitled to attorneys' fees and costs) and FTC enforcement.  (Opp. at 13-14.)  "The mere presence of a fee-shifting and FTC enforcement provision within the FCRA does not

14

automatically render class actions inferior." *Wanek v. C.M.A. Mortgage Inc.*, 05 C 4775, slip op. at 3 (N.D. Ill. April 17, 2006) (Lindberg, J.). Accordingly, the Court finds that a class action is a superior method of litigating this case.

### III. CONCLUSION

Accordingly, because the Court finds that the proposed classes meet the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiffs' Motion for Class Certification [Doc. 35] is hereby **GRANTED**. Plaintiffs' Motion for Leave to Modify Proposed Class Definitions [Doc. 94] is also **GRANTED**. Defendants' request for a hearing is **DENIED AS MOOT**.

The two classes are defined as follows:

Class A consists of all persons with an address within the geographic jurisdiction of the United States District Court for the Northern District of Indiana to whom Defendant New Century Mortgage Corporation sent or caused to be sent material in the form represented by Exhibits A or D (that are attached to the Complaint) between April 20, 2003 and May 10, 2005, who did not obtain credit in response thereto.

Class B consists of all persons with an address within the geographic jurisdiction of the United States District Court for the Northern District of Indiana to whom Defendant Home123 Corporation or New Century Mortgage Corporation sent or caused to be sent material in the form represented by Exhibit B (that is attached to the Complaint) between April 20, 2003 and May 10, 2005, who did not obtain credit in response thereto.

**SO ORDERED.**

ENTERED: August 4, 2006

                                                s/ Philip P. Simon
                                                PHILIP P. SIMON, JUDGE
                                                UNITED STATES DISTRICT COURT